GEORGE E. POND & others *vs.* ELLEN M. HOPKINS & others.

Suffolk.    March 20, 1891. — May 20, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Devise — Reformation of Deed — Guardian — Estoppel.*

A testator, by his will, with the expressed intention of dividing his property equally among his children, devised certain real estate in trust for the benefit of his three daughters, the trustee being directed to convey an undivided third part thereof to the heirs of either daughter who should die intestate, and gave the residue of his estate to his four sons. The will also provided, in case this division should make the shares unequal, that within two years from the time of the testator's death an appraisal might be had at the request of either son or daughter, or of the trustee, and a new distribution made. The proposed division made the respective shares unequal, but no request was made for an

appraisal within the time limited. Afterwards the trustee, pursuant to the will, conveyed an undivided third part of the real estate to the children of a deceased daughter; and still later an agreement respecting the settlement of the estate was entered into by the testator's heirs, which did not profess to disturb titles to real estate, and was executed on behalf of one of the grantees of the deed, a minor, by her guardian. *Held,* that the disposition made by the testator of his property must stand in spite of the inequality. *Held, also,* that the agreement did not work an estoppel such as would enable the trustee and the heirs other than the grantees in the deed to have the deed reformed for the purpose of equalizing the division of the estate.

BILL IN EQUITY, filed March 7, 1888, for the reformation of a deed given by the first named plaintiff, as trustee under the will of Moses Pond, to Ellen M. Hopkins and Gertrude D. Payne, two daughters of Ellen M. Dunlap, a deceased daughter of the testator, who alone defended. The case was heard by *C. Allen,* J., and was as follows.

Moses Pond died on May 3, 1870, leaving four sons and three daughters, who either survived him or left issue surviving at his death. The widow also survived him, and died on August 26, 1878. His will, after various bequests and a provision for an annuity in favor of the widow, which was to be a charge on both his real and personal estate, by the fifth article, conveyed all his real estate to "my friend Samuel G. Bowdlear and my sons Joseph A. Pond and George E. Pond," in trust to pay one third of the net income quarterly to each of his three daughters, Ellen M. Dunlap, Eliza B. Pond, and Caroline A. Prince during their natural lives respectively, and on the death of each daughter to convey one undivided third part of such real estate as the daughter so dying should by will direct; but in case such daughter died intestate, then to convey such third part in fee to her heirs. By the same article, he also authorized his trustees to mortgage the estate to raise money "for the purpose of paying off any subsisting mortgages on said premises, and also for the purpose of paying any money which they may be required to pay under the seventh article of this will." By the sixth article of the will, the residue of the testator's estate was given to his four sons, to be equally divided between them, to be held by them "subject however to the provisions in the next article."

The seventh article of the will was as follows: "I intend to make the division of my property as nearly equal as possible, so that each of my sons and daughters shall have one seventh

of it. But as the value of the real estate given to my daughters may vary, by reason of the payment of mortgages and other circumstances, and the residue left to my sons may also be lessened or increased from various causes, therefore, if any one of my said sons or daughters, or said Bowdlear, shall think the division I have made of my property unequal, then, at any time within two years after my death, on the request of either of my said sons or daughters, or said Bowdlear, a valuation shall be made of the said real estate given in trust for my said daughters, and also of the said residue of my property left to my said sons, the valuation to be made as it was at the day of my death, and if on such valuation it shall appear that the value of my interest in said real property given in trust for my said daughters subject to the mortgages thereon is not equal to three sevenths of all the property, real, personal, and mixed, left by me, after deducting debts, legacies, and charges of administration, then I direct my executors hereinafter named to pay out of my personal property to the said trustees such sum as may be necessary to make the amount of property held by them three sevenths of all the property I may leave, after deducting debts, legacies, and charges of administration, the sum so paid to said trustees to be held and safely invested on the same trusts as are declared concerning the said real estate given in trust, and if possible to be applied towards payment of the mortgages on said real property given in trust; but if, on the other hand, the said residue given my said sons should not be equal to four sevenths of the whole value of all the property, real, personal, and mixed, left by me, after deducting debts, legacies, and charges of administration, then I direct the trustees named in the fifth article to pay to each of my four sons such sum as may be necessary to make the amount of property received by each of my said sons under this will one seventh of all the property I may leave after deducting debts, legacies, and charges of administration; and in order to facilitate the valuation of my property for the purpose aforesaid, in case the valuation made by the appraisers appointed by the Probate Court is not satisfactory, I direct that one person be appointed for the purpose by said Bowdlear, one by said executors, and the third by the two so chosen, whose valuation or that of a majority of them shall be final for the purpose aforesaid."

Neither Bowdlear nor either of the testator's sons or daughters requested a valuation of the testator's estate under article seven of the will within two years after the testator's death. An appraisal of the estate was made in March, 1872, by three appraisers appointed by the Probate Court, whose return however was never sworn to by either of the executors or filed in court. This appraisal was mislaid, and was not found again until April, 1889, and its contents were not known to the defendants. The estate remained undivided by the consent of those interested therein, and the entire income was treated as a common fund, and distributed semiannually among those entitled thereto, from the time of the death of the testator to the filing of the bill. If the property were to be divided as directed by the will, there would be an inequality in the shares, and the daughters' shares would be the larger. In August, 1879, two of the sons of the testator received their respective shares of the estate by having the same credited against debts owed by them to the estate. On October 20 of the same year the first named plaintiff was appointed and qualified as sole trustee under the will, and he immediately of his own motion, as directed by the will, executed the deed in question, of one undivided third part of the testator's real estate which he held as such trustee, to the defendants. On January 30, 1880, the heirs of Moses Pond entered into an agreement, reciting that they each had consented to the postponement of the final settlement of the estate, owing to the depressed condition of the real estate market and to other causes, that two of the testator's sons who had received their shares in full were paid the same as a step towards such settlement, and that the balance of the estate was held for the benefit of the other parties to the agreement. The parties also agreed to a valuation of the estate made on July 1, 1879, which appraisement, " made pursuant to a direction in the will of Moses Pond and for the purposes of the trust in said will created, must be taken as final." After further recitals relating to the management of the estate, but not mentioning the deed in question, the parties to the agreement released the executors and trustee of the estate of Moses Pond " from any liability which may have been or may be incurred by them or either of them by reason of the facts or things herein recited as having been

done." This agreement was signed by the guardian of Gertrude D. Payne in her behalf, she being a minor.

The plaintiffs desired to mortgage the real estate of the testator to raise funds to equalize the shares of the sons and daughters, but the defendants refused to mortgage the portion conveyed to them by the deed in question. The plaintiffs contended that this deed, made by the trustee without first having placed a mortgage on the entire real estate for the purpose of equalizing such shares, was contrary to the testator's intention and was void, and ought therefore to be set aside, or reformed so that it should appear that the property was conveyed subject to liability to such mortgage.

The judge dismissed the bill, with costs; and the plaintiffs appealed to the full court.

*G. O. Shattuck & R. D. Weston-Smith*, for certain of the plaintiffs.

*S. J. Thomas*, for other plaintiffs.

*S. Lincoln*, (*Arthur P. French* with him,) for the defendants.

KNOWLTON, J. In the first six articles of the will of Moses Pond, the testator made a complete disposition of his property, and directed particularly what should be done with every part of it. The seventh article is as follows:

" I intend to make the division of my property as nearly equal as possible, so that each of my sons and daughters shall have one seventh of it. But as the value of the real estate given to my daughters may vary, by reason of the payment of mortgages and other circumstances, and the residue left to my sons may also be lessened or increased from various causes, therefore, if any one of my said sons or daughters, or said Bowdlear, shall think the division I have made of my property unequal, then, at any time within two years after my death, on the request of either of my said sons or daughters, or said Bowdlear, a valuation shall be made of the said real estate given in trust for my said daughters, and also of the said residue of my property left to my said sons, the valuation to be made as it was at the day of my death, and if, on such valuation, it shall appear that the value of my interest in said real property given in trust for my said daughters subject to the mortgages thereon is not equal to three sevenths of all the property, real, personal, and mixed, left by me, after deducting debts, legacies, and

charges of administration, then I direct my executors hereinafter named to pay out of my personal property to the said trustees such sum as may be necessary to make the amount of property held by them three sevenths of all the property I may leave, after deducting debts, legacies, and charges of administration, the sum so paid to said trustees to be held and safely invested on the same trusts as are declared concerning the said real estate given in trust, and if possible to be applied towards payment of the mortgage on said real property given in trust; but if, on the other hand, the said residue given my said sons should not be equal to four sevenths of the whole value of all the property, real, personal, and mixed, left by me, after deducting debts, legacies, and charges of administration, then I direct the trustees named in the fifth article to pay to each of my four sons such sum as may be necessary to make the amount of property received by each of my said sons under this will one seventh of all the property I may leave after deducting debts, legacies, and charges of administration; and in order to facilitate the valuation of my property for the purpose aforesaid, in case the valuation made by the appraisers appointed by the Probate Court is not satisfactory, I direct that one person be appointed for the purpose by said Bowdlear, one by said executors, and the third by the two so chosen, whose valuation or that of a majority of them shall be final for the purpose aforesaid."

In the fifth article Samuel G. Bowdlear is described as his friend, and is made one of his trustees. It appears by the seventh article that the testator supposed that the disposition which he had made of his property in the preceding part of the will would result in a substantially equal division of it, and in that article he provides a mode of revising that disposition if a revision should be asked for by any of the persons interested, or by his friend and trustee, Bowdlear. The basis of the revision is to be a valuation of the property made within two years after his death, the property to be appraised at its value at the time of his death. There is no provision for a valuation, or for a revision of this disposition of the property, after the expiration of two years, and within that time a revision can be had only if one of his sons or daughters, or Bowdlear, thinks the division which he has made unequal,

and requests that a valuation be made for the purpose of a revision of it. To entitle either of the parties to a modification of the specific provisions made by the will in regard to the different parts of the property, he must take action. He must not only think the division unequal, but he must express his thought to the others interested.

The last part of the seventh article makes a provision " in order to facilitate the valuation," but this becomes operative only in case a valuation is asked for, and it directs the manner of appointing the appraisers, and assumes that the valuation made by the appraisers appointed by the Probate Court may be satisfactory to all parties, in which case that may be taken as the basis of the readjustment instead of a new valuation. It is only when some one of the persons mentioned has expressed the opinion that the division made by the will is unequal, and has requested a valuation under this article within two years after the death of the testator, that the inventory made by the appraisers appointed by the Probate Court becomes of any significance in reference to a readjustment, and then only in case it is satisfactory to all the persons interested.

It seems clear that the disposition of his property made by the testator must stand, unless action is taken under the seventh article of his will, and it also seems clear that no action has been taken under it. So far as appears, there was no intimation on the part of either of the persons named in the will that the division was unequal until nearly ten years after the death of the testator, and then there was no request for a valuation, or expression of a desire to take action under this clause. No valuation has ever been made or asked for with a view to a revision, and no inventory was ever filed by the appraisers appointed by the Probate Court. Since the bringing of this suit, an incomplete and imperfect inventory has been discovered, which was never sworn to by either of the executors, and the existence of which was never known to either of the defendants.

The deed made by George E. Pond as trustee to the defendants, after the death of the testator's widow, and more than nine years after the death of the testator, was properly given in accordance with his duty under the will, and there was at that

time no longer any right in favor of any of the plaintiffs to have a revision of the disposition which the testator had made of his property.

It remains to consider the effect of the agreement made on January 30, 1880, by the heirs of Moses Pond. Of this it may be said, first, that it was not signed by the defendant, Gertrude D. Payne, who was then a minor, but was executed by her guardian in her behalf, and that her guardian had no authority to bind her by an instrument releasing her rights in real estate. Moreover, the conveyance to the defendants, which is now complained of, had previously been made, and the writing does not profess to disturb titles to real estate. It is an agreement outside of the subject to which this bill particularly relates. The foundation for the relief prayed for must be found elsewhere than in that writing. The agreement does not work an estoppel which will give the plaintiffs a right to have a reformation of the deed in a suit of this kind. What rights the plaintiffs or any of them have under it in other particulars it is unnecessary to decide. *Bill dismissed.*